James **MAHAN** & Dr. Pepper Bottling Company, Paintsville, Kentucky, Appellants,

v.

Georgie **LITTON**, Guardian for Willis Litton, Appellee.

Court of Appeals of Kentucky.

Feb. 20, 1959.

W. A. Johnson, Paintsville, Robert L. Milby, Lexington, for appellants.

G. C. Perry, III, Paintsville, for appellee.

STANLEY, Commissioner.

The appeal is from a judgment for $3,500 damages for personal injuries sustained by the appellee, Willis Litton, represented by his guardian, when a truck being driven by the appellant James Mahan and owned by the appellant Dr. Pepper Bottling Company of Paintsville and Pikeville, Kentucky, left the highway and overturned. The primary question is whether the plaintiff may maintain the common law action for damages rather than have sought relief under the Workmen's Compensation Act, KRS 342.001 et seq. Other questions of contributory negligence and excessive damages are raised, but we do not reach them under our decision of the case.

We regret the appellee's confidence in the strength of his case is such that he has declined to file a brief. This conclusion is not so obvious to us. Rather than apply a more drastic provision of our Rule 1.260, we will accept the appellants' statement of facts and issues as correct and decide the case upon that statement, which we may add, is a fair one. The statement is as follows:

"Litton had been working on Dr. Pepper's trucks for almost two years as a helper to the driver-salesmen, Harry and James Mahan. He was paid one dollar per day for his labor. He was working on the company's truck at the time of the accident. [He was then eighteen years old.] Dr. Pepper pays its driver-salesmen Ten Cents (10¢) per case to deliver and sell its products; Dr. Pepper permits each driver to have one helper who is paid out of the Ten Cents (10¢) per case. Dr. Pepper knew Litton was employed as a helper and that he received compensation from Mahan out of the Ten Cents (10¢) a case. Dr. Pepper reserved the right to discharge the helpers. Litton recognized Willis Hamilton, man-

ager of Dr. Pepper Bottling Company, as the 'boss.' Dr. Pepper Bottling Company operates under the Workmen's Compensation Act."

The Bottling Company pleaded the court had no jurisdiction because Litton was its employee; the company was operating its business under the provisions of the Workmen's Compensation statute, and Litton had automatically accepted those provisions by virtue of KRS 342.395. Depositions of Litton, Mahan and Hamilton, manager of the plant, were filed. The defendants' motion to dismiss the complaint for want of jurisdiction was overruled, and the case was tried.

Ordinarily, when a question of the employer-employee relationship is involved, the alleged employer takes the position that the person injured was not his employee and that he was not liable under the Compensation Act. In this case the question is presented conversely and in the affirmative.

■ Wherever the Workmen's Compensation law is applicable, the rights and remedies granted or provided thereby are exclusive with certain exceptions which the statute makes. Hence, the right to maintain an action for damages for personal injuries and any corresponding liability of the employer to the employee for negligence of the employer, directly or under the doctrine of respondeat superior, are extinguished, and no common law action can be maintained to recover damages. KRS 342.015. Standard Oil Co. v. Cheek, 278 Ky. 508, 128 S.W.2d 950.

■ It is certain that Litton was not a mere volunteer or stranger. He was an employee either of the bottling company or of Mahan as an independent contractor. If the latter, of course, there was no responsibility upon the bottling company for Mahan's negligence. Standard Oil Co. v. Cheek, supra, 278 Ky. 508, 128 S.W.2d 950.

The question of the relationship of employer and employee has usually arisen in respect of liability or nonliability for tort

and in claims for workmen's compensation. The test in the two categories is substantially the same. If there is any difference, it lies in the attitude of greater liberality in workmen's compensation cases to hold the relationship to exist than in cases of vicarious liability for tort.

■ The usual approach to the proposition of whether a person helping a recognized employee in the discharge of his duties is an employee is to see whether or not the relationship of the helper to the employer is such that he is liable for some wrongful act or omission of the helper to a third party or, as above recited, whether the employer is liable under the Workmen's Compensation Act for injuries sustained by the helper. It may be observed that the relationship of master and servant may exist for one purpose and some other relationship for other purposes. 56 C.J.S. Master and Servant § 2, p. 31.

■ Various elements may tend to indicate the existence of the relationship. No one fact or circumstance is necessarily conclusive. Prominent among the tests usually applied generally is the right of one party to direct what work shall be done by the other and the manner in which it shall be done and the existence of the power to discharge him from service. 56 C.J.S. Master and Servant § 2, pp. 33–36. Sam Horne Motor and Implement Co. v. Gregg, Ky., 279 S.W.2d 755, 53 A.L.R.2d 626; New Independent Tobacco Warehouse No. 3 v. Latham, Ky., 282 S.W.2d 846.

As is well stated in Note 25 A.L.R.2d 991, "Where there has been a continuous or customary use of an assistant by the employee, and the employer has known of this practice and acquiesced in it, the employer is liable for the negligence of the assistant as though actually employed by himself." See also 57 C.J.S. Master and Servant § 564a; 35 Am.Jur., Master and Servant, §§ 163, 540.

In the 1958 edition of the Restatement of the Law of Agency, § 5, subsection (2), the following definition is laid down:

"(2) A subservant is a person appointed by a servant empowered to do so, to perform functions undertaken by the servant for the master and subject to the control as to his physical conduct both by the master and by the servant, but for whose conduct the servant agrees with the principal to be primarily responsible."

The comment upon this text is as follows:

"e. *Situations creating subservants.* The situations in which there may be a subservant relation are relatively rare but may exist where a person is paid by the piece or job and is allowed by the master to select assistants at his own expense, it being understood that the servant is to direct the conduct of the subservant who is to be subject also to the superior power of control which the master may exercise. If this superior control is not exercised, both the master and the servant are liable to third persons for torts of the subservant within the scope of employment for which the servant is an indemnitor to the master. For this purpose, both are masters of the subservant. The servant is also liable to the master for the conduct of the subservant in the scope of employment and is under a duty to indemnify the master if he becomes liable to third persons for such conduct. If the master exercises his prerogative of overriding his servant in giving directions, the subservant is only his servant in doing the directed act. * * *

"f. *Liabilities resulting from the relation.* A subservant committing a tort in the scope of employment subjects both his employer and the latter's master to liability, his employer having a right of indemnity against him and a duty of indemnity in favor of the master of both of them. See § 362. On the other hand, for losses suffered in the rightful performance of his duties, the subservant may be entitled to indemnity either from his immediate master or from the employer of his master, the latter bearing the ultimate burden. See §§ 438, 458 and 459."

In workmen's compensation cases, in determining whether an injured person occupying a status comparable to the plaintiff in this action was entitled to compensation, it is said in 99 C.J.S. Workmen's Compensation § 39a, that an employer may be liable to one hired by his employee where he had authority to hire necessary help, whether such authority was express or implied, and even though it was apparent and not actual; so there may be liability if the employer had knowledge of such hiring or acquiesced therein or consented thereto, expressly or impliedly.

In connection with these two aspects of the question of whether the plaintiff in this action is precluded from maintaining a common law action for damages, the appellant company submits analogous supposititious cases. It submits that if Litton, while carrying a heavy case of the beverage from the truck to the customer, had dropped it on his own foot, he would clearly have had the right to workmen's compensation; and the fact that he was receiving a part of the per-case payment to Mahan, the driver-salesman, would not have deprived him thereof. Brewer v. Millich, Ky., 276 S.W. 2d 12, is cited in support. The other illustrative case is that if Litton had dropped the case of bottles on the foot of a customer of the store into which he was carrying it, the company would be liable for his negligence. Farrell v. Pinson Transfer Co., Ky., 293 S.W.2d 170, is cited in support.

We regard the analogies as apt. The same law and principle must be applied to the condition and circumstances of the case at bar. It stands admitted that the bottling company permitted its employee, Mahan, to hire a helper and approved and acquiesced in the hiring of young Litton. It knew what he was doing in working on the company's truck, knew how he was be-

ing paid, and reserved the right to discharge him as such helper. We do not regard as conclusively showing the nonexistence of the relation the fact that the company did not carry Litton on its payroll or withhold social security or income taxes since it knew that he was being paid out of the money it paid Mahan. 99 C.J.S. Workmen's Compensation §§ 39, 64, 104.

Our conclusion is that the court was without jurisdiction. Accordingly, the judgment is

Reversed.