836 P.2d 1029

SPECIAL FUND DIVISION/NO IN-
SURANCE SECTION, Petitioner
Party in Interest,

Larry Cleveland London,
Petitioner Employer,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

Sean Reeder, Respondent Employee.

Nos. 2 CA–IC 91–0061, 2 CA–IC 91–0062.

Court of Appeals of Arizona,
Division 2, Department B.

May 29, 1992.

The Industrial Com'n of Arizona Special Fund Div./No Ins. Section by Janice L. Fuller and Maria Morlacci, Phoenix, for petitioner party in interest.

The Industrial Com'n of Arizona by Anita R. Valainis, Chief Counsel, Phoenix, for respondent.

Dix & Waterman by William D. Sheldon, Tucson, for respondent employee.

State Compensation Fund, Peter C. Kilgard, Chief Counsel by Jean Kamm Gage, Tucson, for Brad's Custom Roofing, Inc. and State Compensation Fund.

## OPINION

FERNANDEZ, Presiding Judge.

Sean Reeder, the claimant in this workers' compensation case, filed two claims for an injury he suffered, in effect contending that he had two employers at the same time. The administrative law judge (ALJ) found that both Brad's Custom Roofing, Inc. and petitioner Larry London were Reeder's employers for purposes of workers' compensation and that they should be jointly responsible for his benefits. Brad's did not contest the finding and is not a party to this special action. The sole issue before us, then, is the Special Fund's contention that the ALJ erred in concluding that London was Reeder's employer.[1] We agree and set aside the award.

During the evening of September 3, 1990, an employee of Brad's telephoned both London and Timothy Hogan about completing an urgent roofing job that had been started by someone else. London and Hogan are shinglers. They arrived at Brad's office at 6:00 a.m. the next morning, met Brad Hoffman, the owner of Brad's,

---

1. Although London filed a petition for special action in propria persona, he has not filed a brief. The Special Fund Division/No Insurance Section represents London's interests because he does not carry workers' compensation insurance.

and filled out employment applications and W–4 forms. Hoffman agreed to pay them at the rate of $10 per 100 square feet ("per square") of roof shingled. Hogan testified that on piecework jobs such as shingling, a per square rate is paid regardless of the number of workers on the roof.

London brought with him his 17–year-old ward, Sean Reeder. At the time, London and Reeder were employed by another roofing company, where they had been for five months. London worked as a shingler for that company, and Reeder worked as his helper. At Brad's, Reeder remained in the truck while London and Hogan filled out the forms. London testified that he knew Brad's wanted them to get to work, and he assumed that Reeder would fill out his paperwork later.

Hoffman drew them a map of the job site, and they then drove there. After all three began working on the roof, Hoffman arrived at the site and climbed up to the roof. Hogan, London, and Reeder all testified that Hoffman was introduced to Reeder on the roof, that he stayed there 30 to 45 minutes, and that while he was there, he discussed matching the previously installed shingles with Hogan while Reeder passed shingles to Hogan. Hoffman testified that he did not remember meeting or seeing Reeder on the roof that morning.

About 4:00 that afternoon, Reeder was injured when he slipped and fell off the roof. A former employee of Brad's testified that when he reported the accident to Hoffman, Hoffman told him that he had seen Reeder on the roof that morning.

Hogan testified that Brad's paid him cash for the job, and London testified that Brad's sent him a check. He testified that Brad's did not pay Reeder any money. No one asked Reeder whether he was ever paid for the job.

Hoffman testified that he had the authority to fire anyone working on the roof, that he discussed with Hogan how he wanted the shingles to match, and that if he had seen Reeder on the roof and not had any concerns about his age, he would have had Reeder fill out paperwork so he would have been Brad's employee. Hoffman also stated that no one should have been on the roof who was not an employee of Brad's.

## STANDARD OF REVIEW

All parties agree that we are obligated to review the evidence in the light most favorable to sustaining the award. *Central Management Co. v. Industrial Commission,* 162 Ariz. 187, 781 P.2d 1374 (App.1989). Citing *Anton v. Industrial Commission,* 141 Ariz. 566, 688 P.2d 192 (App.1984), the Special Fund and Reeder then contend that a de novo standard of review applies to the ALJ's conclusion that London was Reeder's employer, while Brad's argues that the entire determination is a factual one, citing *Hunt Building Corp. v. Industrial Commission,* 148 Ariz. 102, 713 P.2d 303 (1986). We agree with the Special Fund and Reeder. The facts in this case are not disputed, and the ALJ was not called upon to resolve conflicting facts as was the case in *Hunt.* Thus, we do not weigh the facts and will sustain them if they are reasonably supported by the evidence. *Central Management, supra.* However, we review the conclusion that there was an employer-employee relationship de novo. *Anton, supra.*

## EXISTENCE OF EMPLOYMENT RELATIONSHIP

The portion of the ALJ's award that is pertinent to the issue before us reads as follows:

14. The preponderance of credible evidence indicates that Mr. London exercised sufficient right to control his helper Mr. Reeder to also be deemed his employer for worker's [sic] compensation purposes. It was Mr. London who brought the applicant to this job, had him begin work knowing he had not filled out employment paperwork for Brad's and probably exercised routine supervision of the applicant's work as his helper during the course of the day. The conclusion that Mr. London was Mr. Reeder's employer is reached by reviewing the totality of the circumstances, and despite the legal proscription of an unlicensed con-

tractor hiring a roofing employee. Mr. London was the applicant's legal guardian and was also the applicant's employer in fact at the time of this September 4, 1990, injury, and thus also is liable under Worker's Compensation Laws for this injury. *See Nation v. Weiner*, 145 Ariz. 414 (App), 701 P.2d 1222 (1985) at Footnote 2.

■ It is important to remember several things in reviewing this award. First, there has never been any dispute about London's status at Brad's; he was Brad's employee. On review, the parties have addressed the statutory employer doctrine, apparently because the ALJ raised the issue at the close of the hearing. As the supreme court observed in *Young v. Environmental Air Products*, 136 Ariz. 158, 160 n. 1, 665 P.2d 40, 42 n. 1 (1983), a statutory employer is one who is "compelled by law to pay workmen's compensation benefits to remote employees—i.e., employees of another." *See* A.R.S. § 23–902(B). The issue would be pertinent in this case only if London were an independent contractor or a subcontractor. In that event, the doctrine could be used to hold Brad's responsible. The ALJ found, however, that Brad's was both London's and Reeder's direct employer. Therefore, the doctrine is not applicable here.

Second, there is no dispute that Brad's was Reeder's employer. Therefore, the lengthy discussions in the briefs on that issue are of no assistance on the issue that is before us. Finally, there is no issue whether Reeder was an employee or an independent contractor. It has never been contended that he was anything but an employee; the only question is whether he was London's employee as well as Brad's.

■ Because Reeder was Brad's employee at the time of his injury, the only way London could also be his employer is under some theory either of joint or dual employment. Those terms are defined as follows:

Joint employment occurs when a single employee, under contract with two employers, and under the simultaneous control of both, simultaneously performs services for both employers, and when the service for each employer is the same as, or is closely related to, that for the other. In such a case, both employers are liable for workmen's compensation.

Dual employment occurs when a single employee, under contract with two employers, and under the separate control of each, performs services for the most part for each employer separately, and when the service for each employer is largely unrelated to that for the other. In such a case, the employers may be liable for workmen's compensation separately or jointly, depending on the severability of the employee's activity at the time of injury.

A. Larson, *The Law of Workmen's Compensation* § 48.41 at 8–553 (1991).

An example of dual employment is found in *Butler v. Industrial Commission*, 50 Ariz. 516, 73 P.2d 703 (1937). There, the claimant was employed as a groundskeeper and night watchman for a stadium company and as a general worker for an amusement park company. His duties for each were different, and he was always on call for both jobs. He was injured by a hit-and-run driver while traveling between his two job locations, and the supreme court ruled that both employers were liable for his benefits. In this case, because Reeder performed the same set of duties on the roof whether he was working for one employer or two, under Larson's definitions, he could only have had joint employers, not dual employers.

■ According to Larson, examples of joint employment include leased truck and driver situations, leased heavy equipment and operator situations, and joint venture situations. In a leased truck and driver situation in *Home Insurance Co. v. Industrial Commission*, 123 Ariz. 348, 599 P.2d 801 (1979), the supreme court set aside an award finding that the decedent was a joint employee. The court ruled that insufficient indicia of control existed to support the conclusion that the lessee was also an employer. In doing so, the court held that the determination of whether the right to control exists requires an examination of

the totality of the circumstances and the following factors:

the duration of the employment; the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for workmen's compensation insurance; the extent to which the employer may exercise control over the details of the work, and whether the work was performed in the usual and regular course of the employer's business.

*Id.* at 350, 599 P.2d at 803. No single factor is conclusive in itself. *Id.* We note that in this case, the ALJ referred to the *Home Insurance* factors in connection with his finding as to Brad's; he made no mention of them as to London.

■ The only Arizona cases we have found in which the issue of a joint employment relationship was raised also involved a statutory employer issue. *Ocean Accident & Guarantee Corp. v. United States Fidelity & Guaranty Co.*, 63 Ariz. 352, 162 P.2d 609 (1945); *Hamrick v. Industrial Commission*, 15 Ariz.App. 277, 488 P.2d 482 (1971). Because there is no statutory employer issue here, they are not helpful. The ALJ cited *Nation v. Weiner*, 145 Ariz. 414, 701 P.2d 1222 (App.1985), as support for his conclusion that London was Reeder's employer. In that case, the court determined that an employee of a temporary medical personnel service was also a lent employee of the hospital where she had been placed by the service for two years. The lent employee doctrine holds a special employer liable for workers' compensation benefits under certain conditions when a general employer lends an employee to the special employer. *Id.* That doctrine might be of some assistance to us here if the issue we were deciding was whether Reeder was Brad's employee. It is not helpful, however, in determining whether he was also London's employee. The footnote cited by the ALJ in that case is also of no assistance because it too referred to a lent employee situation.

Section 23–902(A), A.R.S., provides that "every person who has in his employ any workmen or operatives regularly employed in the same business or establishment under contract of hire, except domestic servants" is an employer subject to the workers' compensation laws. There was no evidence here that London has ever employed anyone, nor was there evidence that he and Reeder had entered into a "contract of hire."

■ The ALJ found that London "exercised sufficient right to control" Reeder so as to be his employer. We note, however, that it is the right to control, not the exercise of that right, that is determinative. *Central Management, supra.* The ALJ cited three findings in support of his determination: 1) London brought Reeder to the job, 2) London had Reeder begin work knowing he had not completed paperwork for Brad's, and 3) London "probably exercised routine supervision" of Reeder during the course of the day. There are two difficulties with those findings.

First, there is no evidence in the record to support the third finding. No one was asked about any aspect of London's control over Reeder while he was on the roof. The only specific mention of any work that Reeder did was the testimony that he handed shingles to Hogan in the morning while Hoffman was on the roof. The only testimony about any right to control Reeder had to do with Hoffman's right to control him, not London's.

■ Second, the exercise of "routine supervision" over an employee is not in itself sufficient to establish an employment relationship. "The right to control or supervise the method of reaching a specific result determines whether an individual is an employee or an independent contractor." *Home Insurance*, 123 Ariz. at 350, 599 P.2d at 803. As we noted earlier, however, there is no issue here whether Reeder was an independent contractor. In addition, the applicable test is whether there is control over the method of reaching a desired result versus control over the end result. *Hunt Building, supra.* The ALJ made no finding as to the type of control involved here. In any event, because there is no evidence to support that finding, we cannot consider it. *Id.*

Thus, only two findings remain, neither of which is dispositive of the issue. It is not disputed that London took Reeder to the job site. That fact might be significant if Reeder were already London's employee. However, we fail to see how it can serve to *create* an employment relationship. It is also not disputed that London had Reeder begin work knowing he had not completed paperwork for Brad's. Again, that fact does not *create* an employment relationship. It could simply mean that London was indifferent to the security of Reeder's relationship to Brad's. However, London testified that he knew Brad's was anxious to have the job completed and assumed that Reeder's paperwork would be handled later. Moreover, Reeder testified that he had worked for his prior employer several days before he completed paperwork there. Under the circumstances, therefore, that fact is not significant.

■ The employee carries the burden of establishing the elements of his or her claim by a preponderance of the evidence. *Lapare v. Industrial Commission,* 154 Ariz. 318, 742 P.2d 819 (App.1987). One of the elements of a claim is that the person injured was an employee. A.R.S. § 23–1021. We find no support in the evidence for the ALJ's conclusion that London was Reeder's employer and, therefore, that London was a joint employer of Reeder with Brad's. As a result, the award "cannot be reasonably supported on any reasonable theory of the evidence." *Perry v. Industrial Commission,* 112 Ariz. 397, 399, 542 P.2d 1096, 1098 (1975).

The award is set aside.

HATHAWAY and DRUKE, JJ., concur.