911 P.2d 534

**Thomas FARAGHAR and Susan Faraghar, husband and wife, Petitioner Employer,**

**No Insurance Section/Special Fund Division, Petitioner Party in Interest,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Kathleen Lord, Respondent Employee.**

**No. 1 CA–IC 93–0186.**

Court of Appeals of Arizona, Division 1, Department C.

March 23, 1995.

Reconsideration Denied Aug. 28, 1995.

Review Denied Feb. 21, 1996.*

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Long, Lundmark & Poppe, P.A. by R. Todd Lundmark, Phoenix, for petitioner employer.

Margaret A. Fraser, The Industrial Commission of Arizona, Phoenix, for petitioner party in interest.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Kurth & Kurth, P.C. by Dennis R. Kurth, Phoenix, for respondent employee.

## OPINION

WEISBERG, Judge.

This is a special action review of an Arizona Industrial Commission ("Commission") Decision Upon Hearing And Finding And Award, and Decision Upon Review modifying the Award. For the following reasons, we affirm.

### PROCEDURAL AND FACTUAL HISTORY

Thomas Faraghar ("Faraghar"), petitioner employer, worked as a stockbroker for Chel-

sea Street Securities, Inc. ("Chelsea"). Kathleen Lord ("claimant") worked for Faraghar as a "cold-caller," an individual hired by a broker to make unsolicited calls to find potential customers for that broker. On February 5, 1992, claimant slipped and fell in the common hallway of Chelsea's offices. In November 1992, she filed a workers' compensation claim naming Faraghar as her employer. Chelsea was not named as an employer and has never been a party to this action. Faraghar was uninsured and, accordingly, the No Insurance Division of the Commission processed the claim. After the No Insurance Division denied compensability, claimant requested a hearing.

Claimant, Faraghar, and the former manager of Chelsea testified at the ensuing hearing.[1] Faraghar contended that claimant was Chelsea's employee and, therefore, Chelsea was exclusively liable for claimant's workers' compensation claim. In addition to the testimony of these witnesses, the record included a representative copy of Chelsea's standard stockbroker employment agreement, pursuant to which Faraghar worked for Chelsea. Under this form of agreement, a stockbroker is labelled an employee of Chelsea, is compensated by commission only, and is made financially responsible for specified losses and operating expenses. Among other duties, the stockbroker must attempt "to expand the number of customers who invest in securities through the Employee with the Company." The agreement is silent, though, as to the status of a cold-caller. The practice of Chelsea, however, was that the hiring broker would personally pay the hired cold-caller, and would not be reimbursed by Chelsea.

While the decision to hire a cold-caller was left to the individual stockbroker, Chelsea's manager had to approve each hiring. Therefore, when Faraghar decided to hire claimant, he sought and obtained his manager's approval. Claimant then completed a uniform application and underwent security screening, as required of all Chelsea employees.

Faraghar initially assigned claimant clerical tasks, but subsequently had her cold-call for him. Faraghar personally trained claimant to cold-call, set her work hours and production quotas, and paid her a lump sum of $1000.00 per month from his own account funds. Although she cold-called only for Faraghar, she worked at Chelsea's office and used its equipment. Also, when cold-calling, claimant used a script provided by Chelsea and identified herself as being associated with both Chelsea and Faraghar.

Claimant testified that Faraghar told her that she worked only for him. She considered Faraghar to be her employer and did not receive the fringe benefits received by other employees of Chelsea. Faraghar, on the other hand, testified that he told claimant that she worked for both him and Chelsea.

While Chelsea maintained the right to control the details of stockbrokers' work and that of any of the stockbrokers' cold-callers, claimant's work never presented a situation that required its attention. Although Chelsea monitored the productivity of its stockbrokers, it did not monitor the productivity of cold-callers.

Several months after claimant's industrial injury, and for unrelated reasons, a Chelsea executive directed Faraghar to fire claimant. Faraghar complied. Nevertheless, claimant continued to occasionally cold-call for Faraghar out of her home until he left Chelsea, at which time she resumed full-time cold-calling for him at his new brokerage.

Following the hearing, the Administrative Law Judge ("ALJ") issued an award for a compensable claim. She concluded that Chelsea employed Faraghar and that Chelsea and Faraghar jointly employed claimant. Therefore, both were responsible for providing workers' compensation insurance for claimant. The ALJ also concluded that Chelsea's liability was primary and Faraghar's secondary.

On administrative review, the ALJ modified the award to delete the finding as to primary and secondary liability. She substituted a finding that both Chelsea and Faraghar are liable for claimant's workers' com-

---

1. A former stockbroker with Chelsea also appeared and provided corroborative testimony.

pensation benefits.[2] Faraghar then brought this special action.

## STANDARD OF REVIEW

■ We consider the evidence in the light most favorable to sustaining the award. *Special Fund Div. v. Industrial Comm'n,* 172 Ariz. 319, 321, 836 P.2d 1029, 1031 (App. 1992). We will sustain the award if it is reasonably supported by the evidence. *Id.* Notwithstanding, we apply a *de novo* standard of review to the ALJ's determination of an employer-employee relationship. *Central Management Co. v. Industrial Comm'n,* 162 Ariz. 187, 189, 781 P.2d 1374, 1376 (App. 1989); *Anton v. Industrial Comm'n,* 141 Ariz. 566, 569, 688 P.2d 192, 195 (App.1984).

## DISCUSSION

■ Faraghar does not dispute the ALJ's finding that both he and claimant were employees of Chelsea. Rather, Faraghar argues that, as claimant's co-employee, Faraghar cannot also be her employer, and therefore cannot be responsible for providing workers' compensation coverage. He contends that, for worker's compensation purposes, only Chelsea was claimant's employer and was therefore exclusively responsible for providing her workers' compensation coverage. To support his argument, Faraghar cites several cases in which either subservants or statutory employees have brought successful claims against their masters or statutory employers, or in which the latter have successfully asserted immunity from civil actions. *See Mahan v. Litton,* 321 S.W.2d 243 (Ky.1959) (master immunized from civil suit by subservant); *Mill Street Church of Christ v. Hogan,* 785 S.W.2d 263 (Ky.App.1990) (subservant successfully claimed compensation against master); *Carlson v. Cain,* 204 Mont. 311, 664 P.2d 913 (1983) (statutory employee successfully claimed compensation against statutory employer when contractor/employer uninsured); *cf. State Compensation Ins. Fund v. Castle Mountain Corp.,* 227 Mont. 236, 739 P.2d 461 (1987) (imposing primary liability on *insured* contractor/employer and secondary liability on *insured* statutory employer).

■ We, however, reject Faraghar's position. Initially, we disagree that co-employee status as to a common employer is legally inconsistent with one of the employees employing the other for workers' compensation purposes. At least two Arizona cases have considered such a relationship legally possible, although the court in each case concluded that its facts did not support that result because there was insufficient evidence that one co-employee had the right to control the details of the other's work. *See Special Fund Div.,* 172 Ariz. at 321–24, 836 P.2d at 1031–34 (setting aside award imposing joint liability for lack of evidence that shingler exercised control over helper); *Central Management Co.,* 162 Ariz. at 192, 781 P.2d at 1379 (affirming award imposing single rather than dual liability because only cab company controlled details of the claimant's work as cab driver).

In the instant case, though, Faraghar had the right to control the details of claimant's work as a cold-caller. *See, e.g., Home Ins. Co. v. Industrial Comm'n,* 123 Ariz. 348, 350, 599 P.2d 801, 803 (1979) (applying right of control test to determine employer-employee relationship). Faraghar set claimant's hours, established her quotas, and judged her efficiency as a cold-caller. Faraghar was personally responsible for paying claimant and was not reimbursed by Chelsea. Also, although subject to Chelsea's approval, Faraghar alone determined whether to hire claimant as his cold-caller. Moreover, while it was Chelsea who ordered claimant's termination, Faraghar also had the right to fire her. We therefore hold that, even if both Faraghar and claimant were employees of Chelsea, the ALJ correctly concluded that claimant was an employee of Faraghar as well.

■ Having held that Faraghar was an employer of claimant, we further conclude that he is liable for her workers' compensation coverage regardless whether claimant's

---

2. In stating that both Chelsea and Faraghar were liable, the ALJ evidently meant that Chelsea was liable in the abstract only, since it was not named in the claim and never made a party to the action.

relationship to Chelsea was that of a joint employee, sub-employee, or statutory employee. First, if Faraghar and Chelsea were *joint* employers of claimant, liability would be joint and several. *See* 1B A. Larson, *Workmen's Compensation Law* § 48.45 at 8–5777 to 8–5778 (1986).

■ Next, if claimant were Chelsea's sub-employee, Faraghar would still be liable to claimant. "An agent who employs a subservant or other subagent has the duties and liabilities of a principal to him." Restatement (Second) of Agency § 459 at 378 (1958). The agent/employer consequently may be "required to pay workmen's compensation to an employee who was his servant." *See* Warren A. Seavey, Subagents and Subservants, 68 Harv.L.Rev. 658, 664 (1955) (citing *Lee v. Oreon E. & R.G. Scott Realty Co.*, 96 S.W.2d 652 (Mo.App.1936)).

■ Finally, the result does not change if claimant were Chelsea's statutory employee. A.R.S. section 23–902(B) provides:

> When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his sub-contractor ... are, within the meaning of this section, employees of the original employer.

The statutory employer statute thus imposes on the original employer the responsibility to provide workers' compensation coverage for the independent contractor's employees. Nothing in the statute, however, suggests that the original employer's responsibility is *exclusive*, or that the independent contractor is thereby relieved of liability for benefits. *See, e.g., Young v. Environmental Air Products, Inc.*, 136 Ariz. 158, 160, 665 P.2d 40, 42 (1983) (noting that plaintiffs recovered workers' compensation benefits from insured contractor/employer, but subjecting original employer to civil suit only because it did not meet the requirements of a statutory employer); *Greenway Baptist Church v. Industrial Comm'n*, 130 Ariz. 482, 487, 636 P.2d 1264, 1269 (App.1981) (stating that, under section 23–902(B), claimant is employee of both the statutory employer and the independent con-

tractor); *Hamrick v. Industrial Comm'n*, 15 Ariz.App. 277, 279, 488 P.2d 482, 484 (1971) (holding that "a determination by an award that a workman is an employee of a subcontractor does not preclude a subsequent determination that this same workman is an employee of the original contractor"). We also note that, when imposing liability for compensation benefits, a liberal interpretation of section 23–902(B) furthers the purposes of the Workmen's Compensation Act. *Young*, 136 Ariz. at 163, 665 P.2d at 45.

The cases cited by Faraghar are not to the contrary. *See Hogan*, 785 S.W.2d 263; *Mahan*, 321 S.W.2d 243; *Carlson*, 664 P.2d 913; *Castle Mountain Corp.*, 739 P.2d 461. None of them involves a claimant who sought benefits exclusively from the intermediate employer. Instead, they involve claims or suits either against only the master/statutory employer or against both employers. Moreover, not one of the cases holds that the master/statutory employer is *exclusively* liable. These cases merely establish the liability for compensation benefits, or the concomitant immunity from civil suit, of the master or statutory employer. They do not establish the immunity of the intermediate employer in the case of an exclusive claim.

■ The injured workers in the cases cited by Faraghar simply were seeking recovery from an insured or otherwise financially responsible party. An injured worker in Arizona formerly had the same pragmatic incentive for filing a claim against a master or statutory employer with insurance or deep pockets rather than against an employee/employer or contractor/employer without insurance or resources. *See* Code 1939, § 56–1231 (Supp.1952) (treating award for compensable claim as judgment enforceable in superior court). Then, in 1968, the legislature first gave the Commission discretion to pay compensation to claimants of uninsured employers from the special fund. *See* 1968 Ariz.Sess.Laws Ch. 6, 1014–1015. Finally, in 1973, the legislature mandated compensation from the special fund in such cases. *See* 1973 Ariz.Sess.Laws Ch. 136, 963, 964. In addition, although a claimant used to have an interest in filing multiple claims if more than one employer paid wages to her, *see Butler v. Industrial Comm'n*, 50 Ariz. 516, 525, 73

P.2d 703, 706 (1937), a claimant may now receive credit for wages paid by every employer in a claim against any single employer. *See Wiley v. Industrial Comm'n,* 174 Ariz. 94, 104, 847 P.2d 595, 605 (1993) (amended opinion). Consequently, even if the ALJ is correct that claimant was employed by both Faraghar *and* Chelsea, claimant had no financial interest in filing a claim against Chelsea. Faraghar is therefore solely responsible for claimant's worker's compensation coverage because of the unique history of her claim: he was the only employer against whom she filed a claim.[3]

## CONCLUSION

We conclude that, regardless of the nature of Chelsea's relationship to either claimant or Faraghar, Faraghar was responsible for providing claimant's workers' compensation coverage because he was her employer, and was the only employer named in the claim. Accordingly, we affirm the award.

EHRLICH, P.J., and VOSS, J., concur.

---

3. The parties with a financial interest, the No Insurance Division and Faraghar, did not attempt to join Chelsea. We accordingly need not address whether the No Insurance Division or Faraghar had the right to request joinder of Chelsea. *See* Ariz.Admin.Code R4–13–150 (1987) (allowing any interested party to request joinder of other interested party).

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.