952 P.2d 336

**VANCE INTERNATIONAL, Petitioner Employer,**

**AIG Claim Services, Inc., Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**F.A. Simone Transportation, Respondent Employer,**

**No Insurance Section/Special Fund Division, Respondent Carrier,**

**Paul Jugloff, Respondent Employee.**

No. 1 CA–IC 97–0012.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 8, 1998.

Long, Lundmark & Poppe, P.A. by James B. Long, Phoenix, for Petitioner Employer and Carrier.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for Respondent.

Jones, Skelton & Hochuli by Calvin Harris and J. Russell Skelton, Phoenix, for Respondent Employer.

Ronald M. Andersen, The Industrial Commission of Arizona, Phoenix, for Respondent Carrier.

Paul Jugloff, Phoenix, In Propria Persona.

## OPINION

LANKFORD, Presiding Judge.

¶1 Petitioner Employer and Petitioner Carrier (collectively "Petitioners") filed this special action after an Administrative Law Judge ("ALJ") concluded that Petitioner Employer and Respondent Employer jointly employed an injured worker and were both primarily liable for workers' compensation benefits. Because the ALJ's findings compel the conclusion that Petitioner Vance did not employ the worker, we set aside the award.

¶2 The injured worker sustained injuries in an auto accident while driving a servant of the Saudi Arabian Royal Family ("the Royal Family") to the movies. The parties agree that the injury is compensable; they dispute only the identity of his employer.

¶3 In his workers' compensation claim, the worker identified two employers: Respondent Employer, F.A. Simone Transportation, Inc. ("Simone"), and Petitioner Employer, Vance International ("Vance"). Simone provides transportation for hire. Vance provides security services for the Royal Family. Vance denies having employed the worker at the time of his injury.

¶4 During the Industrial Commission hearing, Simone and Vance testified to the relationship among the Royal Family, Vance, Simone, and the worker. The ALJ summarized this relationship in the following findings:

5. Joint employment occurs when an employee, under contract with two employers and under simultaneous control of both, simultaneously performs service for both employers, and the service is the same for each employer. *Home Insurance Co. v. Industrial Comm'n*, 123 Ariz. 348, 599 P.2d 801 (1979); A. Larson, *The Law of Workers' Compensation*, § 48.4[1] at 8–553 (1991).

6. Here, Vance set Applicant's hours, provided a radio, directed him what to do while he [was] on duty, did a background check, and could dismiss him from the job. However, Simone hired Applicant, provided the vehicle that Applicant drove as well

as the fuel and paid him his wages. Thus Applicant was providing the same service (chauffeuring) for both employers. Although Vance was not in the business of chauffeuring, its security [business] included controlling the chauffeurs for security purposes and was a regular activity performed by Vance. However, Simone continued to benefit from Applicant's work as they were paid for Applicant's services as well as the use of the cars they provided. Simone was able to control Applicant when he was not providing service to Vance as evidenced [by the fact] that Applicant worked for one or two weekends for Simone during the eight month period. While Simone may have not had control of how Applicant performed his work while under the supervision of Vance, they could control his work when he performed services for Simone.

¶ 5 The ALJ concluded that "Applicant was a joint employee of Vance and Simone and both employers are primarily liable for workers' compensation benefits." Petitioners filed a timely Request for Review. The ALJ reviewed and summarily affirmed the award. Petitioners then filed this special action. We have jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") sections 23–943 (1995), 23–951 (1995), 12–120.21(B) (1992), and Rule 10, Rules of Procedure for Special Actions.

¶ 6 We defer to the ALJ's factual determinations. *Dependable Messenger, Inc. v. Industrial Comm'n,* 175 Ariz. 516, 518, 858 P.2d 661, 663 (App.1993). In contrast, the conclusion that an employer-employee relationship existed is an issue of law subject to *de novo* review. *Special Fund Div. v. Industrial Comm'n,* 172 Ariz. 319, 321, 836 P.2d 1029, 1031 (App.1992).

¶ 7 If we defer to the ALJ's findings of fact, her decision that the worker was an employee of Vance is incorrect as a matter of law. While it appears that the worker indeed was jointly employed by Simone and another, the ALJ's findings and the supporting record reveal that the other employer was the Royal Family, not Vance. Like the drivers, Vance was merely another employee of the family.

¶ 8 The driver's relationship with Vance is governed by A.R.S. section 23–902(A), which defines the employers subject to the workers' compensation act. This statute provides:

> Employers subject to the provisions of this chapter are ... every person who has in his employ any workers or operatives regularly employed in the same business or establishment under contract of hire.... For the purposes of this subsection "regularly employed" includes all employments ... in the usual trade, business, profession or occupation of an employer.

¶ 9 One of the requirements of this statute is a contract for hire. For Vance to be an employer, there must be by mutual consent an express or implied contract for hire between Vance and the worker. 3 Arthur Larson & Lex K. Larson, Workers' Compensation Law § 47.10, at 8–302 and 8–304 (1997); Ray J. Davis *et al.,* Arizona Workers' Compensation Handbook § 2.2.1.2 (1992). Remuneration by the employer is an indication of an employment relation. Davis, *supra. See Home Ins. Co.,* 123 Ariz. at 350–51, 599 P.2d at 804–05. Moreover, the nature of the work must be part of the "usual trade, business, profession or occupation of an employer." A.R.S. § 23–902(A).

¶ 10 Based on the ALJ's findings and the record, these criteria were not met here. First, there was no contract for hire between Vance and the driver. As the ALJ specifically found, Simone was hired not by Vance but by the Royal Family. The record is clear that Simone supplied all cars and drivers. After their initial contact with Simone, the Royal Family merely used Vance as an intermediary for communicating their wishes to Simone and the drivers, or at most delegated their supervisory authority to Vance.

¶ 11 The ALJ relied exclusively on Vance's exercise of control over the drivers as the basis for finding an employment relation. However, the record is clear that Vance exercised no control for itself but merely conveyed the wishes of its employer, the Royal Family. Vance had no control over the drivers, and no relationship with the

drivers, independent from that reposed in the actual employer, the Royal Family.[1] Thus, although Vance exercised control over the drivers, the evidence indicates that in doing so Vance was merely a conduit for the exercise of control by the real employer, the Royal Family.

¶ 12  More importantly, without a contract for hire, no amount of control suffices. Although the right to control a worker is an indication of an employment relationship, see *Home Ins. Co. v. Industrial Comm'n*, 123 Ariz. 348, 599 P.2d 801 (1979), it is not sufficient alone to demonstrate the relationship. The statute requires a contract of hire. The ALJ did not find one between Vance and the worker, but instead found that the Royal Family and not Vance contacted Simone, which in turn hired the drivers. Accordingly, *this record simply does not permit* the conclusion that Vance employed the drivers.

¶ 13  This case is like *Special Fund Div. v. Industrial Comm'n*, 172 Ariz. at 321–24, 836 P.2d at 1031–34, in which we set aside an award imposing joint liability· on a shingler and a roofing company for an injury to the shingler's helper. Based on lack of evidence that the shingler had entered into a contract of hire with the helper, we held that only the roofing company employed the helper. Similarly, the absence of a contract of hire between Vance and the worker necessarily means that Vance is not responsible.

¶ 14  This case is very unlike *Faraghar v. Industrial Comm'n*, 184 Ariz. 528, 911 P.2d 534 (App.1995). In that case, both a stock brokerage and a stock broker were held to be employers. However, the stockbroker was an employer because he had hired the claimant, trained her, controlled the details of her work, and paid her out of his own pocket.

¶ 15  Finally, it is revealing that Vance paid neither Simone nor the drivers. As the ALJ found, Simone billed the Royal Family directly, and Simone in turn paid the drivers.

¶ 16  Under these facts, Vance was not the worker's employer. Vance no more employed this worker than does any co-employee—such as a shift supervisor—who directs workers on behalf of the employer.

¶ 17  While the worker may have been jointly employed by Simone and the Royal Family, he was never employed by Vance. Because Vance is not an employer, we set aside the award.

GARBARINO and NOYES, JJ., concur.

---

1. Even the exercise of some incidental independent control does not render one an employer. In *Central Management Co. v. Industrial Comm'n*, 162 Ariz. 187, 192, 781 P.2d 1374, 1379 (App. 1989), we affirmed the ALJ's determination that a taxicab driver who sublet her vehicle to claimant was not claimant's employer despite the exercise of control over the care of the vehicle. Because control over the sublessee driver's basic performance was exercised by the taxicab company, that company was the employer.