**OSMAN HOME IMPROVEMENT, United Staffing, and Credit General Insurance, Petitioners,**

v.

**INDUSTRIAL COMMISSION, Uninsured Employers' Fund, Arnulfo Steven Sosa, and Enrique Sosa, Respondents.**

No. 970406–CA.

Court of Appeals of Utah.

April 30, 1998.

Thomas C. Sturdy, Salt Lake City, for Petitioners.

Alan L. Hennebold, Salt Lake City, for Respondent Industrial Commission.

Sharon J. Eblen, Salt Lake City, for Respondent Uninsured Employers' Fund.

Before BENCH, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge.

Osman Home Improvement (Osman), United Staffing, and Credit General Insurance appeal an Industrial Commission (Commission) determination that Osman was the sole employer of Arnulfo Steven Sosa (Steven) when Steven suffered an employment-related injury. Osman argues that Steven's uncle, Enrique Sosa (Enrique), was also Steven's employer at the time of Steven's accident and that, because Enrique did not have workers' compensation coverage, the cost of Steven's workers' compensation should be shared by the Uninsured Employers' Fund. We affirm.

## BACKGROUND[1]

Osman is a roofing company owned by Mike Osman. In 1995, Osman contracted to install roofs on the buildings of a new apartment complex in Sandy. It then placed an advertisement for roofers to work on the project. Enrique responded to that ad, but did not submit a bid for the work. Instead, Enrique and Osman agreed that Osman would pay Enrique $14 for every 100–feet–square that Enrique completed. Enrique set his own hours and provided his own staple gun, compressor, saw, ladder and safety ropes. Osman, however, provided all the necessary roofing materials.

Although Mr. Osman is a licensed contractor familiar with Utah's requirement that contractors be licensed, he did not require that Enrique be licensed. In fact, Enrique has never held a Utah contractor's license.

A few days after he was hired, Enrique took Steven to meet Mr. Osman and asked if Steven could work as Enrique's assistant. Mr. Osman consented. It is customary in the roofing trade for assistant roofers to be compensated by sharing in the piece rate earned by the experienced roofer to whom

---

1. Because Osman does not challenge the Commission's findings of fact, we recite the relevant facts from the Commission's Order Granting Motion to Review.

they are assigned. In this case, Enrique and Steven agreed Steven would receive $10 per hour, to be paid out of Enrique's piece rate.

Enrique and Steven began work on Osman's project on July 20, 1995. At least once, Mr. Osman saw Steven working and did not object. Steven was injured on July 22, 1995, when he slipped from the roof of a building in the project, injuring his feet and ankles.

A Compensation Hearing was held before an Industrial Commission Administrative Law Judge (ALJ). The ALJ concluded that Osman was Steven's "statutory employer," but that Enrique was Steven's "common law employer." Thus, the ALJ determined that both Osman and Enrique were liable for Steven's workers' compensation benefits.[2]

Enrique then filed a Motion for Review by the Commission. The Commission issued an Order Granting Motion for Review, reversing the ALJ's ruling that Enrique was one of Steven's employers. The Commission concluded that Osman had sufficient control over both Enrique and Steven to negate the possibility that Enrique was Steven's employer. The Commission noted that Osman retained "unfettered control over all aspects of the project," that Osman had to authorize all individuals working on the project, and that Osman "could discharge any of the workers at any time." Furthermore, Osman paid Steven directly for his work. Finally, because it is customary in the roofing industry for both employees and independent contractors to provide their own tools, the fact that Enrique did so in this case was not determinative.

Osman filed a Petition for Writ of Review with this court.

### ISSUE

In its Petition, Osman does not challenge the Commission's findings of fact or the determination that it is a statutory employer under Utah Code Ann. § 35–1–42(6)(a)

(Supp.1996).[3] Osman argues only that the Commission erred in determining Enrique was not also Steven's employer at the time of Steven's accident.

### STANDARD OF REVIEW

■ Historically, Utah appellate courts have tended to view the issue of employer or employee status as a question of law, reviewing the Commission's determination for correctness. *See, e.g., Bennett v. Industrial Comm'n,* 726 P.2d 427, 429 (Utah 1986); *BB & B Transp. v. Industrial Comm'n,* 893 P.2d 611, 612 (Utah Ct.App.1995).

■ However, in *Caporoz v. Labor Commission,* 945 P.2d 141, 143 (Utah Ct.App. 1997), this court revisited the standard of review issue in light of *Morton International, Inc. v. Auditing Division of the Utah State Tax Commission,* 814 P.2d 581 (Utah 1991), and a 1994 amendment to Utah Code Ann. § 35–1–16(1) defining the Commission's authority. In *Morton,* our supreme court held that "absent a grant of discretion, a correction-of-error standard is used in reviewing an agency's interpretation or application of a statutory term." 814 P.2d at 588. Where there has been such a grant of discretion, however, appellate courts must apply an intermediate level of scrutiny to the agency's determination. *See id.* at 587.

After *Morton,* the Utah Legislature amended section 35–1–16(1) of the Utah Code to provide that the Industrial Commission "has the duty and the full power, jurisdiction and authority to *determine the facts and apply the law in this or any other title or chapter that it administers.*" Utah Code Ann. § 35–1–16(1) (1994) (emphasis added); Industrial Commission Authority, ch. 207, § 1, 1994 Utah Laws 972. The *Caporoz* court was the first to consider this amendment's effect on the standard of review we apply to the Commission's application of the law. Relying on *Morton,* the *Caporoz* court

---

**2.** However, because Enrique was not insured and could not otherwise pay, his share of liability would be paid by the Uninsured Employers' Fund.

**3.** At the time of Steven's accident, the Utah Workers' Compensation Act was codified at Utah

Code Ann. §§ 35–1–1 to –109 (1994 & Supp. 1996). We thus refer to those sections of the Act. We note, however, that effective July 1, 1997, those sections were repealed and recodified at Utah Code Ann. §§ 34A–2–101 to –803 (1997).

concluded that the amendment's grant of discretion to the Commission to apply the law requires that we apply an intermediate standard of review to its determinations. *See Caporoz,* 945 P.2d at 143.

■ We adhere to this court's conclusion in *Caporoz.*[4] Where the Legislature's grant of discretion is as broad as that set forth in section 35–1–16(1), the intermediate standard of review announced in *Caporoz* applies. *See Nucor Corp. v. Utah State Tax Comm'n,* 832 P.2d 1294, 1296 (Utah 1992) (stating "[a]gency discretion may be either express or implied and, if granted, results in review of the agency action for an abuse of discretion"); *Caporoz,* 945 P.2d at 143. Under the intermediate standard of review, we look for an abuse of discretion. *See* Utah Code Ann. § 63–46b–16(4)(h)(i) (1997). In applying that standard, we determine whether the agency decision exceeded " 'the bounds of reasonableness and rationality.' " *Niederhauser Ornamental & Metal Works Co., Inc. v. Tax Comm'n,* 858 P.2d 1034, 1037 (Utah Ct.App. 1993) (citation omitted).

## ANALYSIS

■ Osman claims on appeal that the Commission erred in deciding Enrique was not Steven's employer at the time of Steven's accident. We conclude, however, that the Commission did not abuse its discretion in applying the law to the facts.

Utah Code Ann. § 35–1–42 provides, in relevant part:

(2) [E]ach person, including ... each independent contractor, who regularly employs one or more workers or operatives in the same business, or in or about the same establishment, under any contract of hire, express or implied, oral or written is considered an employer under this title. As used in Subsection (2):

(a) "Regularly" includes all employments in the usual course of the trade, business, profession, or occupation of the employer, whether continuous throughout the year or for only a portion of the year.

(b) "Independent contractor" means any person engaged in the performance of any work for another who, while so engaged, is independent of the employer in all that pertains to the execution of the work, is not subject to the rule or control of the employer, is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design.

Utah Code Ann. § 35–1–42 (Supp.1995). In addition, Utah Code Ann. § 35–1–43 defines "employee" as

each person in the service of any employer ... who employs one or more workers or operatives regularly in the same business, or in or about the same establishment, under any contract of hire, express or implied, oral or written, ... but not including any person whose employment is casual and not in the usual course of the trade, business, or occupation of his employer.

*Id.* § 35–1–43(b) (Supp.1995).

■ "An employee, for the purpose of work[ers'] compensation, may have two employers." *Kinne v. Industrial Comm'n,* 609 P.2d 926, 928 (Utah 1980); *see also BB & B Transp. v. Industrial Comm'n,* 893 P.2d 611, 612 (Utah Ct.App.1995). In such cases, both employers are liable "under the theory that the employee is serving both employers and is under the control of both." *BB & B*

---

4. On appeal, Osman argues *Caporoz* has been displaced by the supreme court's recent opinion in *Drake v. Industrial Commission,* 939 P.2d 177, 181 (Utah 1997) (stating "agency's application of the law to the facts may, depending on the issue, be reviewed by an appellate court 'with varying degrees of strictness, falling anywhere between a review for "correctness" and a broad "abuse of discretion" standard.' " (citation omitted)). We disagree. According to statements of counsel for the Commission at oral argument, *Caporoz* remains the only case in which an appellate court has been asked to consider the effect of the 1994 amendment to section 35–1–16(1) on the standard of review applicable to Commission action. Thus, although *Drake* set forth an analysis for determining the exact standard of review applicable to agency determinations, the court was not asked to consider and therefore did not address whether the same analysis applies where the Legislature has made an explicit grant of discretion to the agency, as in section 35–1–16(1). Furthermore, nothing in *Drake* indicates an intention by the court to displace its own precedent on that issue, which precedent we relied upon in *Caporoz.*

*Transsp.,* 893 P.2d at 612–13 (citation omitted). However, it is only where the evidence "shows that an 'employer' retains the right to control the work of the claimant" that "the claimant is the employer's employee for work[ers'] compensation purposes." *Bennett v. Industrial Comm'n,* 726 P.2d 427, 429–30 (Utah 1986). Furthermore, "[i]t is the *right* of control that is the critical element underlying an employment relationship," not the actual exercise of control. *Kinne,* 609 P.2d at 928; *see also Averett v. Grange,* 909 P.2d 246, 249 (Utah 1995).

Factors suggestive of the right to control include the right to hire and fire, the ability to supervise the work and dictate job assignments, responsibility for paying wages and addressing employee grievances, and the need to provide equipment used by the employee. *See Bennett,* 726 P.2d at 430; *Kinne,* 609 P.2d at 928; *BB & B Transp.,* 893 P.2d at 613. However, no one factor is completely controlling; instead, " 'they all should be considered.' " *Graham v. R. Thorne Found.,* 675 P.2d 1196, 1198 (Utah 1984) (per curiam) (citation omitted).

In its brief, Osman concedes that "Osman had the right to control Enrique" and that it "retained authority over the job including the right to fire roofers and to require roofers to obtain its permission before hiring any assistants." Osman appears to assert that, nonetheless, Enrique was some type of independent or sub-contractor who exercised independent control over Steven. However, in *Rustler Lodge v. Industrial Commission,* 562 P.2d 227 (Utah 1977), the court specifically stated that the difference between an employee and an independent contractor is: " 'An independent contractor can employ others to do the work and accomplish the contemplated result without the consent of the contractee, while an employee cannot substitute another in his place without the consent of the employer.' " *Id.* at 228 (citation omitted). Thus, Osman's right to control who Enrique chose as an assistant, and to fire that assistant at any time, refutes Osman's assertion.

Furthermore, even if Enrique could have exercised some control over Steven, such supervisory control does not render Enrique the employer of Steven. In *Sutton v. Industrial Commission,* 9 Utah 2d 339, 344 P.2d 538 (1959), an entity named Eager Beaver hired two people, Curtis and Reynolds, to complete a roofing job. When Rupp requested employment, Eager Beaver referred Rupp to Reynolds, "the foreman." *See id.,* 344 P.2d at 539. Curtis and Reynolds "hired" Rupp and agreed to pay Rupp out of their own proceeds. *See id.* Despite this compensation agreement and the fact that Eager Beaver did not require its consent prior to Reynolds's employing Rupp, the court concluded Eager Beaver was Rupp's sole employer, concluding that Curtis and Reynolds were acting merely as Eager Beaver's supervisors in exercising control over the project. *See id.* at 540. The court noted that Eager Beaver "was on hand to initiate the job and to explain the specifications and directions pertaining to it," that "Eager Beaver paid Rupp directly for his work," and that Eager Beaver "furnished the roofing and hauled it there in its own trucks." *Id.*

Similarly, in *Special Fund Division/No Insurance Section v. Industrial Commission,* 172 Ariz. 319, 836 P.2d 1029 (Ariz.Ct.App. 1992), London was hired by Brad's Custom Roofing, Inc. to complete some roofing. *See id.,* 836 P.2d at 1030. London took his ward, Sean Reeder, with him. *See id.* at 1031. Although Reeder had not yet completed any employment paperwork for Brad's, Brad's supervisor saw Reeder on the roof and voiced no objection. *See id.* Reeder was almost immediately injured on the job. *See id.* In reviewing the ALJ's ruling on liability, the court rejected the ALJ's determination that London was Reeder's joint employer. *See id.* at 1034. The court found no evidence "that London has ever employed anyone, nor was there evidence that he and Reeder had entered into a 'contract of hire.' " *Id.* at 1033. The court rejected the ALJ's determination that London " 'exercised sufficient right to control' Reeder so as to be his employer," stating that "it is the right to control, not the exercise of that right, that is determinative." *Id.* Furthermore, the "exercise of 'routine supervision' over an employee is not in itself sufficient to establish an employment relationship." *Id.* Finally,

the fact that London had taken Reeder to the job site did not create an employment relationship between them. *See id.* at 1034.

In this case, it is undisputed that Osman retained the right to hire and fire all roofers and their assistants; that Mr. Osman appeared at the job site at least once during the days Steven was employed; that Osman paid Steven directly for his work on the project; that Osman provided all the roofing material required to complete the project; and that Enrique was not an independent contractor and had no authority to hire Steven without first seeking Osman's permission. It is apparent from these findings that any authority that Enrique might have had over Steven was merely as a supervisor over whom Osman retained absolute control.[5] Under such circumstances, the Commission did not abuse its discretion in deciding Enrique was not Steven's employer at the time of Steven's accident.

### CONCLUSION

Because the Commission did not abuse its discretion in deciding that Enrique was not Steven's employer at the time of Steven's work-related accident, we affirm the Commission's decision that Osman is solely liable for payment of Steven's workers' compensation benefits.

BENCH and ORME, JJ., concur.

---

**5.** This case, then, is easily distinguishable from *BB & B Transport,* upon which Osman so heavily relies. In that case, Bundy entered a truck lease agreement with BB & B Transport to provide BB & B with trucks and drivers. *See BB & B Transp.,* 893 P.2d at 613. In determining that both Bundy and BB & B were an injured driver's employers, the court noted that the lease agreement specifically outlined the considerable control that each entity would retain. *See id.* Bundy, for example, retained responsibility for hiring drivers, setting their wages and hours, paying their wages, addressing their grievances, and providing liability and cargo insurance for leased trucks. *See id.* BB & B, on the other hand, was responsible for the care, custody, and control of the equipment and for the maintenance of personal injury and workers' compensation insurance; in addition, BB & B could veto any hiring decisions made by Bundy, and it retained the exclusive right to dispatch drivers, make job assignments, and oversee each trip. *See id.* In this case, Osman concedes it retained complete control over its roofing project. Thus, even if Enrique did exercise some control over Steven, he did so only with the tacit approval of his "boss," Osman.