Compensation Appeals Board
No. 2007-817

APPEAL OF RODERICK JENKS
(New Hampshire Compensation Appeals Board)

Argued: September 17, 2008
Opinion Issued: December 10, 2008

*Decato Law Office, P.C.*, of Lebanon (*William A. Whitten* on the brief and orally), for the petitioner.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*James E. Owers* and *Timothy A. Gudas* on the brief, and *Mr. Owers* orally), for the respondent.

BRODERICK, C.J. The petitioner, Roderick Jenks, appeals a decision of the New Hampshire Compensation Appeals Board (CAB) denying him recovery under the Workers' Compensation Law. *See* RSA 281-A:2 (1999 & Supp. 2008). The CAB ruled that Jenks was not an employee of the respondent, New Hampshire International Speedway (NHIS), at the time of his injury, and thus not entitled to benefits under the statute. We affirm.

The following facts were found by the CAB or are supported by the record. In July 2006, Jenks was employed part-time as a school bus driver for the Lebanon School District and was self-employed performing building maintenance. He was also an active "volunteer" for Fishin' For Kids, Inc. (FFK), a nonprofit corporation established to raise money for children's charities that help children with medical, mental and physical ailments. FFK had no employees and its officers and directors never received any compensation.

NHIS owned and operated a race track in Loudon for many years. It conducted three major event weekends each year; two of which were NASCAR events. In 1992, a member of a youth Pop Warner Football organization approached NHIS, looking for funding to buy uniforms for its football teams. In response, NHIS developed a fundraising model that it

used repeatedly in subsequent years to help groups such as churches, school groups and various service clubs raise money. As implemented, "volunteers" from nonprofit or charitable organizations performed services at NHIS during race weekend events. In exchange for the "volunteer" services, NHIS gave $7.00 to the particular organization for each hour that its "volunteers" spent providing services at the speedway.

Under this fundraising program, NHIS made arrangements with FFK to allow its "volunteers" to provide services at NHIS during the NASCAR race weekend of July 15-16, 2006. NHIS generally hired about 700 staff for race weekend events and also used the services of hundreds of "volunteers" to put on the event. For the July weekend, FFK completed a "Non-Profit Group Contact Information" form, which identified the number of individuals it proposed to bring to the speedway as "volunteers."

Subsequently, FFK signed a "Non-Profit Group Agreement" with NHIS. Under the agreement, FFK promised to provide a confirmed number of "volunteers" and NHIS promised to "donate $7.00 per hour worked for each person who volunteers his/her time from [FFK]."

Jenks and his wife Melissa agreed to work at NHIS on behalf of FFK on July 15-16, 2006. Jenks and others who were "volunteering" for FFK attended a one-hour orientation program conducted by NHIS' human resource manager. Because Jenks expressed an interest in performing security duties at the speedway, NHIS required him to complete and submit a criminal records release form. This was the only paperwork Jenks was required to complete.

Over the course of the July 15-16 weekend, Jenks and several other FFK participants provided a total of 195 hours of infield security and cleaning services at NHIS. At the start of the weekend, Jenks received a shirt and hat from NHIS to identify his role as a security official. He also was granted a discount at the NHIS gift shop and on food at the track's concessions. Jenks received no direct monetary compensation for his time at the speedway from either NHIS or FFK.

While riding on a golf cart on NHIS grounds, en route to his security assignment on July 16, Jenks fell and struck his head on the pavement. As a result he suffered a severe and disabling traumatic brain injury. NHIS does not contest the extent or severity of Jenks' injuries, or that they occurred while he was providing security services.

In November 2006, Jenks filed a claim for workers' compensation against NHIS. The hearing officer found that at the time he was injured, Jenks was an employee of NHIS for purposes of the Workers' Compensation Law. NHIS appealed to the CAB, which reversed, finding no employer-employee relationship existed, and thus Jenks was not entitled to benefits. This appeal followed.

On appeal, Jenks argues that: (1) the evidence before the CAB overwhelmingly supported a finding that at the time of his injury he was an employee of NHIS for purposes of the Workers' Compensation Law, and that the CAB erred in finding that he was not an employee of NHIS under a "contract of hire"; and (2) the CAB erred in ruling that he was not entitled to the benefit of the five criteria delineated at RSA 281-A:2, VI(b).

The critical issue before us is whether Jenks was an employee of NHIS for the purposes of the Workers' Compensation Law. *See* P. SALAFIA, NEW HAMPSHIRE WORKERS' COMPENSATION MANUAL § 1.07, at 1-9 (3d ed. 2008) ("To establish a claim under the New Hampshire workers' compensation act, it is necessary to prove . . . [that] the injured individual [was] an employee . . . ."). Jenks contends that he was an employee of NHIS who received pay at the rate of $7.00 per hour, which he elected to have donated to FFK, in furtherance of its program of charitable giving. NHIS maintains that Jenks was not its employee, but a volunteer who never received pay and who never intended to receive pay.

Our standard of review for the CAB's decision is established by statute: "[A]ll findings of the [board] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 541:13 (2007). Although we review the CAB's findings of fact pursuant to this deferential standard, we review its statutory interpretation *de novo*. *Appeal of Regenesis Corp.*, 156 N.H. 445, 454 (2007). On questions of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *State v. Sullivan*, 144 N.H. 541, 543 (1999). We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *ElderTrust of Fla. v. Town of Epsom*, 154 N.H. 693, 697 (2007).

The Workers' Compensation Law defines an "employee" in relevant part as "any person in the service of an employer . . . under any express or implied, oral or written *contract of hire* . . . ." RSA 281-A:2, VI(a) (emphasis added). The statute does not define "contract of hire." However, we have previously held that "[i]n order to establish a contract [of] hire, the claimant must have received or expected to receive payment of some kind." *Appeal of Dube*, 138 N.H. 155, 157 (1993); *accord* 3 A. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 65.0 1, at 65-2 (2008) (noting "the compensation decisions uniformly exclude from the definition of 'employee' workers who neither receive nor expect to receive any kind of pay for their

services"). The term "payment" is not defined in the statute, but we have observed that payment need not be cash wages. For example, "an exchange of services for two lawnmowers could constitute payment under a contract [of] hire." *Dube*, 138 N.H. at 157 (quotation omitted).

Despite this observation, in *Dube*, we affirmed the CAB's finding that no employer-employee relationship existed. The claimant in *Dube* was trimming his neighbor's trees when a limb unexpectedly snapped, causing him to fall and suffer injuries. Soon after the accident, an adjustor for the neighbor's insurance carrier obtained recorded statements from Dube and the neighbors. Dube was asked whether he was going to get paid for any of the work he performed for the neighbors. He replied: "I don't work for friends and expect to get paid." Similarly, Dube's neighbor responded: "I was not going to pay [Dube]. This was done on a friendship basis." *Id.*

However, at the hearing, Dube and the neighbors testified that at the time they gave their recorded statements, they believed the adjustor was only asking about cash payments, and had they understood he was also asking about non-monetary compensation, they would have told the adjustor that the claimant was to receive two lawnmowers from the neighbors in return for cutting the tree limbs. *Id.* Nevertheless, in concluding that no employer-employee relationship existed, we emphasized the CAB's factual finding regarding the parties' intent, as conveyed by their statements immediately following the accident. Therefore, we held that no contract of hire existed because Dube did not receive or expect to receive payment of some kind.

■ As in *Dube*, the record before us supports the CAB's findings that Jenks never expected to receive payment from either FFK or NHIS and that the parties did not intend that the charitable donation would constitute payment for Jenks' service. In fact, Melissa Jenks, testifying at the hearing as her husband's duly appointed guardian and on his behalf, "indicated that neither she nor [her husband] had any expectation that they would be paid a wage for their volunteered services over the weekend." In addition, NHIS, in its Non-Profit Group Agreement, stated: "NHIS will *donate* $7.00 per hour worked for each person who *volunteers* his/her time from your ORGANIZATION." (Emphases added.) These and other statements in the record by the parties and others support the CAB's finding that neither party expected or intended that the charitable donation by NHIS constituted payment for Jenks' security services. The determination of the parties' intent is a question of fact and we must deem it *prima facie* lawful and reasonable unless we are satisfied by a clear preponderance of the evidence that it is unjust or unreasonable. *See* RSA 541:13. Accordingly, on this record, we defer to the CAB findings on the parties' intent.

The CAB's focus on the parties' intent in order to determine whether any payment occurred for purposes of establishing a contract of hire is consistent with legal analyses adopted in other jurisdictions under similar factual circumstances. *See, e.g., Hoste v. Shanty Creek Management, Inc.*, 592 N.W.2d 360, 365-68 (Mich. 1999) (holding that "payment" must be intended as wages and be substantial consideration such that a reasonable person would be induced to give up the right to bring a tort claim against the employer); *Board of Ed. of City of Chicago v. Industrial Com'n*, 290 N.E.2d 247, 250 (Ill. 1972) ("[T]he relationship of an employer and employee is a product of mutual assent."); *GKN Co. v. Magness*, 744 N.E.2d 397, 403 (Ind. 2001) (noting intent or belief of the parties may be an important factor in determining whether an employer-employee relationship existed); *Iowa Mutual Ins. Co. v. McCarthy*, 572 N.W.2d 537, 544 (Iowa 1997) ("[T]he parties' intent is a proper consideration in determining whether there is an employment relationship."); *Klusendorf v. Labor and Industry Review*, 328 N.W.2d 890, 894 (Wis. Ct. App. 1982) (finding no contract of hire existed when there was no evidence indicating the parties intended or expected wages would be paid or received). It is also consistent with generally accepted principles governing employment contracts. *See, e.g.*, 27 AM. JUR. 2D *Employment Relationship* § 12 (2004) ("[P]arties may form an implied contract based upon the parties' understanding and intent as ascertained from circumstances . . . ."); *id.* § 13 ("[T]he employer-employee relationship is usually formed according to the principles that govern the formation of other contracts . . . includ[ing] . . . the parties' mutual assent to be bound . . . .").

▋▋ Jenks also argues that the hat, shirt, and discounted rate on food and souvenir items constituted payment, thereby creating a contract of hire. We disagree. Although these items could constitute payment under some circumstances, the CAB could have reasonably found on the record before it that they did not in this case. *See Dube*, 138 N.H. at 157. Jenks bore the burden of proof on this issue, and he produced no evidence that these items were intended by the parties as "payment" for services. In fact, the hat and shirt were required apparel for those performing security services at NHIS. Likewise, he offered no evidence that the discounts on souvenirs and food were anything other than gratuities or gifts. *See id.* ("[M]ere gratuities or gifts, unless understood by the parties to constitute the equivalent of wages, are not considered payment under a contract of hire." (quotation omitted)); *see also* 3 LARSON, *supra* § 65.03[1], at 65-23 (espousing same rule for various discounts that may come with the claimant's position, but that are not primarily intended to be remuneration for specific services); *Doe by Doe v. Greenville Hosp. System*, 448 S.E.2d

564, 567-68 (S.C. Ct. App. 1994) (unpaid hospital volunteer who received classroom and on-the-job training, as well as a uniform and a free lunch, was not an employee under the workers' compensation act).

Finally, Jenks argues that RSA 281-A:2, VI(b)(1)(A)-(E) required the CAB to find that he was an employee unless NHIS affirmatively proved the five statutory criteria by a preponderance of the evidence. We disagree.

█ RSA 281-A:2, VI(b)(1) establishes a presumption of an employer-employee relationship for individuals "who perform[] *services for pay* for an employer." RSA 281-A:2, VI(b)(1) (emphasis added). This presumption may be rebutted only by proving an individual meets statutorily enumerated criteria. *See* RSA 281-A:2, VI(b)(1)(A)-(E) (current version at RSA 281-A:2, VI(b)(1)(A)-(L) (Supp. 2008)). We have already established, however, that Jenks did not perform services for payment within the meaning of the statute. Therefore, no presumption of an employer-employee relationship arises, and we need not address the applicability of the statutory criteria to the relationship between Jenks and NHIS.

█ We recognize that "[t]his court construes liberally the Workers' Compensation Law in order to give the broadest reasonable effect to its remedial purpose. Thus, when construing the statute, we resolve all reasonable doubts in favor of the injured worker." *Appeal of Cote*, 139 N.H. 575, 578 (1995) (citation omitted). Nevertheless, "[t]he nature and extent of compensation . . . is governed by the express statutory language and that which can be fairly implied therefrom." *Rooney v. Fireman's Fund Ins. Co.*, 138 N.H. 637, 638-39 (1994) (quotation omitted). Further, because the right to compensation is statutory in its origin, injured workers' rights can be no greater than what the legislature has provided. *Appeal of N.H. Youth Dev. Ctr.*, 152 N.H. 86, 88 (2005).

We need not and do not decide today whether private sector volunteers are eligible for benefits under the Workers' Compensation Law. Further, we need not decide whether Jenks was a volunteer at the time of his injury. Rather, we hold that the CAB, under the circumstances of this case and on the record before it, could have reasonably found that there was no contract of hire, and that accordingly, no employer-employee relationship existed. Because we do not find by a clear preponderance of the evidence that the CAB's decision was unjust or unreasonable, we affirm.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.