310 P.3d 976

Sheila HENDERSON–JONES, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

International Foundation for Education, Respondent Employer,

SCF Arizona, Respondent Carrier,

Special Fund Division/No Insurance Section, Respondent Party in Interest.

No. 1 CA–IC 12–0053.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 22, 2013.

Taylor & Associates, PLLC By Benjamin F. Manion, Phoenix, Attorneys for Petitioner.

Andrew F. Wade, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Klein, Doherty, Lundmark, Barberich & La Mont, P.C. By R. Todd Lundmark, Phoenix, Attorneys for Respondent Employer.

James B. Stabler, Chief Counsel, SCF Arizona By Sharon M. Hensley, Phoenix, Attorneys for Respondent Carrier.

Special Fund Division/No Insurance Section, The Industrial Commission of Arizona By Stephen D. Ball, Phoenix, Attorney for Respondent Party in Interest.

## OPINION

GEMMILL, Judge.

¶ 1 This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for a non-compensable claim. The question presented is whether Sheila Henderson–Jones was an employee or a volunteer of respondent employer, the International Foundation for Education and Self–Help ("IFESH"), which is headquartered in Scottsdale, Arizona. Because the evidence and law reasonably support the findings and conclusion of the Administrative Law Judge ("ALJ") that Henderson–Jones was a volunteer, we affirm the award.

¶ 2 On March 13, 2010, Henderson–Jones was working for IFESH in its Teachers for Africa Program, later renamed International Educators for Africa ("IEFA"). She was living in Akoupe, Republic of Cote d'Ivoire, and teaching English at the College Moderne

Barry Callebaut. While teaching, Henderson–Jones noticed that many of her students appeared to have problems with their eyesight, and she decided to work on a project to procure eye exams and eye glasses for her students. While traveling by bus to Abidjan, Cote d'Ivoire, to meet with a visiting group of ophthalmologists from the United States, the bus overturned and Henderson–Jones was injured. She received initial treatment in Abidjan before being airlifted to France.[1] After returning to the United States, Henderson–Jones filed a workers' compensation claim. Her claim was denied for benefits, and she timely requested an ICA hearing.

¶ 3 IFESH is a 501(c)(3) non-profit organization, which was founded thirty years ago in Pennsylvania by the late Reverend Leon Sullivan for the purpose of helping African women and children. IEFA is a program overseen by IFESH and funded by the U.S. Agency for International Development ("USAID"), a branch of the U.S. State Department that provides funding for IEFA. IEFA's primary focus is adult literacy and basic educational improvement in underprivileged African countries. Henderson–Jones originally came in contact with IFESH in 2001. Henderson–Jones had a bachelor's degree in journalism, most of the requirements for a master's degree in education, and very extensive teaching experience. She became aware of the program through a recruitment bulletin, applied, was accepted, and worked for a year in Benin, Africa. Henderson–Jones then returned to Maryland and worked at her regular job until 2009 when she contacted IFESH's director of educational programs about returning to IFESH.

¶ 4 In August 2009, Henderson–Jones was reaccepted into IFESH's IEFA program and traveled to Scottsdale for a one-week orientation. During the orientation, participants heard from representatives of IFESH and USAID. Henderson–Jones acknowledged that she was told that her participation in the program was as a volunteer. She also received and reviewed IFESH's Program Handbook, which stated:

1. IFESH provided medical insurance coverage to   its volunteers.

Participation in the TFA program is strictly on a volunteer basis. Although IFESH provides a nominal living stipend and other allowances to each volunteer, participants are not paid for their services nor are they employees of IFESH. All volunteers agree to participate in the TFA program strictly at their own risk.

¶ 5 During her orientation week, Henderson–Jones also signed an IFESH Participation Agreement with a representative of USAID. The agreement stated that she participated in IFESH as a volunteer, that she understood she was not an employee of IFESH, and that she would be paid a stipend but not a salary. After signing the agreement, she was considered accepted into the program and received the $600 pre-departure allowance, which was intended to cover visas, inoculations, and other costs of preparing to travel.

¶ 6 In October 2009, Henderson–Jones traveled to Cote d'Ivoire and spent an additional two to three weeks receiving in-country orientation from IFESH's Cote d'Ivoire country director, local doctors, and other teachers. She began her teaching duties in Akoupe in November 2009. She received per diem cash payments during the orientation to cover travel, hotel, and meal expenses. IFESH also paid for Henderson–Jones's apartment and utilities. At the end of the in-country orientation, Henderson–Jones received a $350 country settling-in allowance. The per diem provided by IFESH is based on the international per diem rates established by the U.S. State Department. No taxes are required to be paid on per diems that are below the rates established by the State Department.

¶ 7 Henderson–Jones received an $850 monthly stipend for her living expenses, transportation, and other incidentals. The proceeds of the stipend were not reported to the Internal Revenue Service because they did not exceed the per diem rate for Cote d'Ivoire and did not, therefore, constitute taxable income. Henderson–Jones testified that her food and expenses were approximately $200 a month and that she used the balance of her stipend for savings, trips, recreation, and souvenirs. For 2009,

Henderson–Jones's Form 1099 reported $950 of taxable income: $600 for the pre-departure allowance and $350 for her country settling-in allowance.

¶ 8 At the conclusion of the ICA hearing, the ALJ entered an award for a noncompensable claim, explaining:

[A]pplicant was working as a volunteer and not as an employee at the time of her tragic accident on May 13, 2010. Applicant's work for IFESH was commendable and courageous. Her assertion, however, that she did not understand the nature of her status as a volunteer and instead believed she was an employee is not credible. The participation agreement that she signed was not a contract of hire and the monthly stipend th[at] she received was not a wage. Applicant knew or should have known (consistent with the terms of the agreement that she signed) "that there are significant potential health and other hazards (both foreseeable and unforeseeable) associated with participating in the Program. These include death or personal injury due to ... motor vehicle accidents ... In spite of these potential risks and after considered evaluation of the conditions under which [she would] be living and teaching, [she] decided to participate in the Program and agree[d] to do so *AT [HER] OWN RISK.*" (Agreement § 4).

Henderson–Jones requested administrative review, and the ALJ summarily affirmed the Award. Henderson–Jones appeals, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(2) (2003), 23–951(A) (2012), and Arizona Rule of Procedure for Special Actions 10 (2009).

¶ 9 In reviewing an ICA award, we defer to the ALJ's factual determinations. *Vance Int'l v. Indus. Comm'n,* 191 Ariz. 98, 100, ¶ 6, 952 P.2d 336, 338 (App.1998). We recognize that the ALJ is the sole judge of witness credibility. *Holding v. Indus. Comm'n,* 139 Ariz. 548, 551, 679 P.2d 571, 574 (App.1984). It is the ALJ's duty to resolve all conflicts in the evidence and to draw all warranted inferences. *Malinski v. Indus. Comm'n,* 103 Ariz. 213, 217, 439 P.2d 485, 489 (1968). When multiple inferences may be

drawn, the ALJ is at liberty to choose whichever he or she finds most credible, and this court will not disturb the ALJ's conclusion unless it is wholly unreasonable. *Id.* The ultimate determination of whether an employer-employee relationship existed, however, "is an issue of law subject to *de novo* review." *Vance Int'l,* 191 Ariz. at 100, ¶ 6, 952 P.2d at 338.

¶ 10 When reviewing decisions of the ICA, we are mindful that the purposes of the workers' compensation statutes "are remedial and designed to provide compensation for those persons injured in business or industry" and we apply a liberal construction of those statutes "in order to effectuate that purpose." *Anton v. Indus. Comm'n,* 141 Ariz. 566, 569, 688 P.2d 192, 195 (App.1984). We will not, however, "interpret" the statutes to provide benefits when, under the facts and the law, an injury is not compensable. *See Hahn v. Indus. Comm'n,* 227 Ariz. 72, 74, ¶ 7, 252 P.3d 1036, 1038 (App.2011) (explaining that a "liberal construction" does not always produce a "generous interpretation" because we are "constrained by the plain language" of the statutes).

¶ 11 To be entitled to benefits under the Arizona Worker's Compensation Act, a worker must have been "in the service of an employer subject to [the Act]" at the time of the injury. *See* A.R.S. §§ 23–901(6)(b) (2012), –902(A) (2012), –1021(A) (Supp.2012). To establish an employer-employee relationship, there must be a contract of hire between the parties. *See* A.R.S. § 23–902(A) (defining employers subject to this chapter as "[e]very person who employs any workers or operatives regularly employed in the same business or establishment under contract of hire...."); A.R.S. § 23–901(6)(b) (defining employee as "every person in the service of any employer subject to this chapter, including aliens and minors legally or illegally permitted to work for hire ..."); *DeVall v. Indus. Comm'n,* 118 Ariz. 591, 592, 578 P.2d 1020, 1021 (App.1978) (explaining that although a contract of hire may be implied or express, it is in all cases necessary); 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 64.01 (2012).

¶ 12 A contract of hire is an agreement to work for another for some type of payment. *See Vance Int'l,* 191 Ariz. at 100, ¶ 9, 952 P.2d at 338 ("Remuneration by the employer is an indication of an employment relation."); Larson, *supra* ¶ 1 11, at § 65.01. A contract of hire does not exist when someone labors for another on a gratuitous basis. *Ferrell v. Indus. Comm'n,* 79 Ariz. 278, 281, 288 P.2d 492, 494 (1955). Payment, however, may include the provision of something of value other than traditional wages or salary. *Id.;* Larson, *supra* ¶ 11, at § 65.01.

¶ 13 When determining whether a claimant is an employee or an independent contractor for purposes of workers' compensation benefits, we examine whether there was a contract of hire between the parties and, specifically, whether the employer controlled or had the right to control the employee. *See* A.R.S. § 23–902(B), (C); *Vance Int'l,* 191 Ariz. at 100–01, ¶¶ 8–13, 952 P.2d at 338–39 (considering both contract of hire and exercise of control to determine whether worker was employee). Because independent contractors are customarily paid for their work, the requirement of a contract of hire is seldom an issue and the primary focus is usually on the employer's right to control the worker. *See, e.g., Vance Int'l,* 191 Ariz. at 100–01, ¶¶ 9–11, 952 P.2d at 338–39; *Anton,* 141 Ariz. at 574, 688 P.2d at 200 (focusing on "right to control" in determining that injured claimant was an employee rather than an independent contractor).

¶ 14 When determining whether a claimant is an employee or a volunteer, however, the inquiry will generally focus less on the right to control and more on the presence or absence of a contract of hire. *See* Mitchell H. Rubinstein, *Our Nation's Forgotten Workers: the Unprotected Volunteers,* 9 U. Pa. J. Lab. & Emp. L. 147, 173 n. 131 (2006) (recognizing that the "right to control" test used for distinguishing independent contractors from employees is not particularly helpful in distinguishing volunteers from employees). The distinction between an employee and a volunteer lies not so much in the employer's exercise of control over the individual, but in whether the individual expected to receive, and did receive, payment for ser-

vices rendered. Volunteers are generally subject to the organization's control and often perform work in the same conditions and manner as paid employees. A volunteer, however, does not expect to be paid a salary or wages.

■ ¶ 15 Arizona cases that examine whether a claimant is an employee or a volunteer consider the right to payment in determining whether a contract of hire is present. *See Ferrell,* 79 Ariz. at 281, 288 P.2d at 494 (stating that in order for a person to be considered an employee, "some form of duty to serve and remuneration therefor" must exist); *Vance Int'l,* 191 Ariz. at 100, ¶ 9, 952 P.2d at 338 (explaining that remuneration generally indicates an employment relationship); *DeVall,* 118 Ariz. at 592, 578 P.2d at 1021 (considering that five percent of the gross rental income was delivered to the claimant personally in deciding that she was treated "in all respects as an employee"). The totality of the facts regarding the relationship between the employer and the claimant must be considered, including the intentions and expectations of the parties regarding payment. *See Ferrell,* 79 Ariz. at 281, 288 P.2d at 494 (concluding there was no contract of hire when the parties intended that claimant would perform services and the employer would donate any amount paid for the services to a charity); *DeVall,* 118 Ariz. at 592, 578 P.2d at 1021 (despite the employer's statements that it only intended to employ husband, the totality of the circumstances indicated that both husband and wife were employees).

¶ 16 Other jurisdictions have similarly held that a right to payment is a key factor distinguishing an employee from a volunteer. *See, e.g., Simmons v. SC STRONG,* 402 S.C. 166, 739 S.E.2d 631, 634 (App.2013) ("To be considered an employee under a contract of hire . . . a person must have a right to payment for his services."); *Appeal of Jenks,* 158 N.H. 174, 965 A.2d 1073, 1076 (2008) ("[I]n order to establish a contract [of] hire, the claimant must have received or expected to receive payment of some kind."); *Hoste v. Shanty Creek Mgmt., Inc.,* 459 Mich. 561, 592 N.W.2d 360, 365 (1999) (stating that the phrase "of hire" connotes payment of some

kind); *Camphill Village, U.S.A., Inc. v. Workmen's Comp. Bd.,* 23 N.Y.2d 202, 296 N.Y.S.2d 129, 243 N.E.2d 739, 741 (1968) ("[V]olunteers, as distinguished from employees, are those who do not get paid for their work."); *see also* Mitchell, *supra* ¶ 14, at 183 (proposing that the test for whether a worker is an employee or volunteer requires consideration of "whether the putative employee was hired which involves an examination of whether the employee receives remuneration" and whether the employer controlled or had the right to control the worker).

■ ¶ 17 Because the question is whether Henderson–Jones was an employee or a volunteer, the fact that IFESH exercised a degree of control over Henderson–Jones's work is not dispositive. As already noted, an organization will likely exercise control over both employees and volunteer workers. The dispositive issue here is whether Henderson–Jones contracted to receive payment from IFESH for services rendered or, instead, agreed that the stipend amounts IFESH would provide her were mere reimbursements for expenses incurred in performing volunteer work. We acknowledge that "payment may be found in anything of value, such as board and lodging." *Ferrell,* 79 Ariz. at 281, 288 P.2d at 494 (citing The Law of Workmen's Compensation, Vol. 1, Sec. 47, page 686). The payment must be intended as remuneration, however, rather than as reimbursement for the incidental, or out-of-pocket, costs of volunteering. *See, e.g., Veeck,* 756 N.E.2d at 1083–84 (stating that the claimant's hourly stipend and reimbursement of some expenses were not "payments" of wages or compensation); *Wolf,* 705 A.2d at 485 (stating that benefits in the form of transportation and meal costs and a nontaxable stipend were "intended to reimburse the claimant for the incidental costs of providing volunteer services."). Stipends and reimbursements designed to offset the cost of volunteering are not "payments" for purposes of determining whether a claimant is an employee. *See Cmty. Action Program of Evansville v. Veeck,* 756 N.E.2d 1079, 1083–84 (Ind.App.2001); *Wolf v. Workers' Comp. App. Bd.,* 705 A.2d 483, 485 (Pa. Comwlth.1997).

¶ 18 The evidence supports the ALJ's finding that Henderson–Jones was a volunteer. She was not paid a salary or compensation for her work. During training, Henderson–Jones's travel, hotel, and meal expenses were paid. She received a pre-departure allowance of $600 before leaving for Africa. Once Henderson–Jones completed the in-country orientation, she received a $350 country settling-in allowance, followed by her $850 monthly stipend. These payments are similar to the reimbursements received by the claimant in *Wolf*, 705 A.2d at 485. In that case, the claimant received assistance with her transportation and meal costs and a nontaxable stipend funded by federal monies, and the court found these nominal gratuities were not valuable consideration. *Id.* Although the amounts Henderson–Jones received in this case are higher than those in some reported cases, the expenses involved in Henderson–Jones's volunteer work, travel to Africa, inoculations, and other costs incidental to volunteering in a developing country, were also higher.

¶ 19 Henderson–Jones argues that the amount of the stipend indicates it was in fact a wage because it exceeded her living expenses. We are not persuaded by this contention, however, because the ALJ determined that the amount Henderson–Jones received was "only a fraction of the non-taxable per diem allowance permitted under federal guidelines regarding living costs for the area." The federal per diem amount for the area in which Henderson–Jones was volunteering in 2009 was $49; Henderson–Jones's stipend of $850 per month constitutes approximately $28 per day, well below the non-taxable per diem allowance. *See Camphill*, 296 N.Y.S.2d 129, 243 N.E.2d at 742 (stating that the amount of a stipend is significant in determining whether it is an expense allowance or a payment). Furthermore, the stipend amounts and allowances were not "bargained consideration" for services Henderson–Jones rendered. *See id.* at 741. In *Camphill*, because the allowance and living arrangements provided were based on the group needs of the volunteers rather than the "output of services or products" of each individual, the stipend was not a wage, and the individuals were not em-ployees. *Id.* at 742. Similarly, in this case all the IFESH teachers volunteering in the same area as Henderson–Jones received the same $850 monthly stipend. Henderson–Jones was receiving a stipend that enabled her to volunteer in Africa. The evidence supports the ALJ's finding that the stipend "was not a wage," leading to the ultimate conclusion that the stipend amounts and allowances she received did not convert her from a volunteer to an employee.

¶ 20 The Worker's Compensation statutes provide further support for our conclusion that the legislature did not intend to provide worker's compensation benefits for volunteers such as Henderson–Jones. The statutory definition of employee contains specific exceptions to the requirement of a contract of hire. Section 23–901(6)(d) includes members of volunteer fire departments and § 23–901(6)(g) includes members of the volunteer sheriff's reserves. Henderson–Jones's activities do not fit within the enumerated expansions of the definition, and we will not interpret the statute to include volunteers such as Henderson–Jones without a more specific legislative directive. *See Wolf*, 705 A.2d at 486.

¶ 21 Based on the ALJ's factual findings and the legal principles discussed above, we conclude that the evidence and law support the ALJ's determination that Henderson–Jones was a volunteer. Deciding whether a worker is an employee or a volunteer often requires a factually intensive analysis. The ALJ found there was no contract of hire and the stipend Henderson–Jones received was not a wage. Although IFESH had a right to control its volunteers' work and the stipend Henderson–Jones received may have exceeded her actual living expenses, the totality of the facts as determined by the ALJ demonstrated that Henderson–Jones was a volunteer rather than an employee. For these reasons, we affirm the award.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and MICHAEL J. BROWN, Judge.