NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DENNIS COBURN, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

LARRY H MILLER MGMT CORP, *Respondent Employer*,

WCF NATIONAL INSURANCE CO, *Respondent Insurance Carrier*.

No. 1 CA-IC 22-0030
FILED 8-08-2023

Special Action - Industrial Commission
ICA Claim No. 20210690098
Carrier Claim No. 202104546
The Honorable Jeanne Steiner, Administrative Law Judge

**AFFIRMED**

COUNSEL

Law Office of Eric C. Awerkamp, Mesa
By Eric C. Awerkamp
*Co-Counsel for Petitioner Employee*

Stillwell Law Office PLLC, Phoenix
By Thomas R. Stillwell
*Co-Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Lundmark Barberich La Mont & Slavin PC, Phoenix
By Kirk A. Barberich
*Counsel for Respondent Employer and Insurance Carrier*

---

**MEMORANDUM DECISION**

Acting Presiding Judge Angela K. Paton delivered the decision of the Court, in which Judge D. Steven Williams and Judge Maria Elena Cruz joined.

---

**P A T O N**, Judge:

¶1          Dennis Coburn seeks review of an Industrial Commission of Arizona ("ICA") award setting his monthly wage for workers' compensation at $4,634.18.  We affirm the award.

**FACTS AND PROCEDURAL HISTORY**

¶2          Coburn worked as an automotive transmission mechanic at Larry H. Miller Mgmt. Corp. ("Employer") for over 25 years.  In February 2021, he was injured on the job and applied for workers' compensation.  The ICA approved his application and issued a notice setting his average monthly wage ("AMW") at $4,634.18.  The ICA based Coburn's monthly wage on his earnings from February 11, 2020, through February 9, 2021.

¶3          Coburn requested a hearing to dispute his noticed AMW.  At the hearing, he argued his AMW should be based on his earnings between 2016–2019 and set at the statutory maximum of $5,030.33.  Coburn submitted pay stubs showing monthly earnings of over $5,000 until 2019, followed by a one-third drop in earnings in 2020.  He argued the ICA erred by basing his AMW on his 2020 earnings because those wages had been "artificially low" due to "temporary manufacturing shutdowns caused by COVID."

¶4          Employer asked the ICA to base Coburn's AMW on his earnings from February 2020 through January 2021 and set it at $4,691.06.  Employer argued Coburn's earnings in 2020 decreased because of

"business conditions unrelated to the Coronavirus" and attributed Coburn's decreased wages to the expiration of factory warranties for DPS6 transmissions. At the hearing, Employer explained that the wages for DPS6 repairs were extremely generous and that the "easy paying work ran out" when the warranties on those transmissions expired in February 2020. Employer testified that the pandemic did not affect the amount of work available, that cars were always at the shop waiting and ready to be serviced, and that Coburn "could have earned more income had he agreed to accept other transmission jobs reasonably available to him." Employer argued Coburn's pre-COVID wages from 2016–2019 were not representative of his wages at the time of injury or of his probable future earning capacity.

¶5         After the hearing, the administrative law judge ("ALJ") issued its decision setting Coburn's AMW. The ALJ summarized Coburn's and Employer's arguments and concluded there was "no basis" to accept one party's explanation for Coburn's reduced wages in 2020 over the other's. The ALJ set Coburn's AMW at $4,634.18 and found that his earnings "in the 365 days between February 11, 2020, through February 9, 2021 . . . constitute[d] the most reasonable basis upon which to establish his average monthly wage."

¶6         Coburn brought this special action challenging the ALJ's award. This court has jurisdiction under Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(2) and 23-951(A).

**DISCUSSION**

¶7         Under Arizona's workers' compensation scheme, an injured worker receives disability benefits based on the worker's "average monthly wage at the time of injury." A.R.S. § 23-1041(A). An employee's AMW is presumed to be his actual wages in the 30 days immediately preceding his injury, but the ALJ has discretion to consider an employee's wages over an expanded period "when the presumptive wage base does not realistically reflect [the employee's] earning capacity." *Elco Veterinary Supply v. Indus. Comm'n*, 137 Ariz. 46, 47–48 (App. 1983). The employee bears the burden of proving his AMW. *Zapien v. Indus. Comm'n*, 12 Ariz. App. 334, 336 (1970). Here, the parties agree that the presumptive AMW did not accurately reflect Coburn's earning capacity, and both parties asked the ALJ to use an expanded wage base.

¶8         Coburn argues the ALJ abused its discretion by selecting February 2020 through February 2021 as the expanded wage base because

during that time COVID-19 "indisputably" caused his earnings to temporarily decrease. We disagree. Generally, an expanded wage base should not include periods when an employee is unable to work due to factors outside the employee's control. *See Pettis v. Indus. Comm'n*, 91 Ariz. 298, 303 (1962) (holding that inclusion in base wage of two months during which employee was prevented from working by employer shutdown was improper). But here, Coburn was continuously employed for over 25 years, and Employer consistently disputed Coburn's argument that COVID-19 shutdowns caused his wages to decrease in 2020. Although the parties gave conflicting explanations for Coburn's decreased earnings in 2020, the ALJ is responsible for resolving all conflicts in the evidence and "this court will not disturb the ALJ's conclusion unless it is wholly unreasonable." *See Henderson-Jones v. Indus. Comm'n*, 233 Ariz. 188, 191–92, ¶ 9 (App. 2013). We cannot say the ALJ's decision to base Coburn's AMW on wages earned over the twelve months immediately preceding his injury was "wholly unreasonable" because it was supported by evidence in the record.

**CONCLUSION**

¶9          We affirm.

